# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

### CENTRAL DIVISION



FILED

MAR 09 2015

CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:14-CR-30122-RAL |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENTS AND EVIDENCE |
| RONNIE KEITH CIRCLE BEAR, | |
| Defendant. | |

## SUMMARY

In this sexual abuse case, Ronnie Keith Circle Bear seeks to suppress, on Fourth and Fifth Amendment as well as *Miranda* grounds, the evidence seized from his motel room – where he allegedly engaged in sexual contact with an adolescent girl – and the pre- and post-arrest statements he made to investigating tribal officers. Because none of this evidence is excludable, the Court recommends Circle Bear's suppression motion be denied.

## BACKGROUND

In the early morning hours of June 24, 2014, a night clerk from the Cheyenne River Sioux Motel contacted tribal police and reported a crying female had just left the Motel and was asking for help. Ambulance personnel, who happened to be in the area, likewise reported seeing a girl walking across the road headed toward the Eagle Stop

Convenience Store.  Officer Clayton Kennedy, responded to the reports and met up with 17-year-old R.H., in front of the convenience store.  The officer attempted to talk to her, but she appeared to be intoxicated and was hysterical.  From what the officer was able to discern, R.H. had been drinking but someone (a male) had "forced" her to do so.

Within minutes, Officer Milo Lafferty arrived and conversed with R.H. in his patrol car.  There, she disclosed her uncle, Circle Bear, had raped her.  She said the rape occurred in room 202 of the Motel after she was "forced" to drink alcohol and passed out.  According to R.H., when she woke up and realized what had happened, she managed to get out of the room and make it to the front desk – while Circle Bear was following her – and ask for help.

After speaking with Officer Lafferty, Officer Kennedy went to the Motel and made contact with Lucinda Cook, the desk clerk, who confirmed Circle Bear was in room 202.  Officer Kennedy proceeded to the room and knocked several times on the door.  Eventually, Circle Bear answered the door.  He stood at the threshold clad only in his underwear and appeared to be under the influence of alcohol.  The officer identified himself and asked if he could enter.  Without saying anything, Circle Bear opened the door wider and motioned the officer into the room.

Inside, the officer inquired whether Circle Bear had anyone staying with him.  Circle Bear replied he did not.  When asked if he was sure, Circle Bear admitted R.H. had been drinking alcoholic beverages with him.  The officer could see vodka in the room and Circle Bear showed the officer peppermint Schnapps and juice containers in a

2

small room refrigerator. The officer then questioned Circle Bear further about R.H.'s whereabouts. At first, Circle Bear did not know where she was, then declared she was with an unidentified friend and in the end said she had left with some "friends" he could not name or provide any descriptions of.

At some point, Officer Kennedy noticed what he thought were scratch marks on Circle Bear's back. The officer asked about the scratches and Circle Bear denied having any. Following this, Circle Bear was informed he was under arrest for the tribal charge of contributing to the delinquency of a minor child and handcuffed. He was subsequently turned over to another officer for transportation to the Cheyenne River Law Enforcement Center and incarcerated there.

About 45 minutes later, Officer Lafferty arrived at the motel room, took photographs and, with Officer Kennedy, collected evidence – bedding, a towel and blanket, clothing and a loofah – from the room.

That same morning, approximately seven hours after his arrest, Circle Bear was interviewed at the Law Enforcement Center. Detective Gordon Runs After conducted the interview and Officer Lafferty was present for and witnessed the same. Before being interviewed, Circle Bear was advised of his *Miranda* rights, signed a written waiver of them and made incriminating statements, acknowledging he had drank with and furnished alcoholic beverages to R.H., but maintained he was innocent of whatever happened to R.H. in the motel room.

3

Afterward, Circle Bear was indicted and charged with aggravated sexual abuse by force and sexual abuse of a person incapable of consenting. He then moved to suppress the warrantless entry, arrest, search and seizure on Fourth and Fifth Amendment grounds and based on violations of *Miranda*.

The Government filed a response to the motion, resisting Circle Bear's claims. A hearing was held on February 18, 2015, at which the Court heard testimony from three tribal officers and received a number of exhibits into evidence. Circle Bear is scheduled to stand trial on the sexual abuse charges shortly.

## DISCUSSION

### A. Warrantless Entry Into and Arrest Inside of the Motel Room

Circle Bear first claims the warrantless entry into his motel room and arrest inside of it ran afoul of the Fourth Amendment. As he sees it, Officer Kennedy was required, but failed to obtain, a warrant before entering the room and arresting Circle Bear on the tribal contributing to the delinquency of a minor offense.

It is a well-established constitutional principle that absent consent or exigent circumstances, law enforcement officers may not enter a person's home without a

warrant.[1]  The same protection extends to a person's privacy in temporary dwelling places such as a motel room.[2]

For a consensual entry and search of a dwelling place to be valid, consent actually must be given (either express or implied) and the person giving it must have (actual or apparent) authority to do so.[3]  Implied consent is established when a resident or occupant opens the door, steps back and allows an officer to enter.[4]

Here, the precise question is not whether Circle Bear consented subjectively, but rather, whether his conduct would have caused a reasonable person to believe he

---

[1]See Steagald v. United States, 451 U.S. 204, 211 (1981); Payton v. New York, 445 U.S. 573, 586 (1980).

[2]See Hoffa v. United States, 385 U.S. 293, 301 (1966); Stoner v. California, 376 U.S. 483, 490 (1964); United States v. Conner, 127 F.3d 663, 666 (8th Cir. 1997).

[3]See United States v. Williams, 521 F.3d 902, 906 (8th Cir. 2008).

[4]See Curnett, 123 Fed. Appx. 733, 735 (8th Cir. 2005), cert. denied, 547 U.S. 1033 (2006); United States v. Smith, 973 F.2d 1374, 1376 (8th Cir. 1992); United States v. Turbyfill, 525 F.2d 57, 59 (8th Cir. 1975); see also United States v. Esquivias, 416 F.3d 696, 703 (8th Cir. 2005) (although verbal consent given just to "step in," opening the door and stepping back in an inviting manner enough to grant narcotics investigator permission to enter hotel room more than a step or two); United States v. Williams, 346 F.3d 796, 799 (8th Cir. 2003) ("consent reasonably implied from behavior" suffices under the Fourth Amendment).

consented to the entry of his motel room.[5] Crediting Officer Kennedy's testimony, the Court concludes that Circle Bear's actions would have engendered just such a belief.[6]

Officer Kennedy knocked on the motel room door. When Circle Bear opened it, the officer identified himself and asked if he could enter. Circle Bear then pulled the door further toward him and waved the officer in. At no time did Circle Bear say or do anything to indicate he did not want the officer in the room.

Once inside, Officer Kennedy inquired about R.H. and Circle Bear admitted she had been staying with him and he had drank with her. Circle Bear showed Officer Kennedy, and the officer could see, alcoholic beverage, juice and soda bottles in the room. Notably, R.H. appeared to be intoxicated and Circle Bear had alcohol emanating from his person when the officer first came in contact with him. Given what he had seen, smelled and had been told, the officer had probable cause to arrest Circle Bear for contributing to the delinquency of a minor (by furnishing alcoholic beverages to R.H. and consuming them with her).

Circle Bear's warrantless arrest did not violate the Fourth Amendment because it was preceded by consent and made while Officer Kennedy was lawfully in the motel

---

[5]See Williams, 521 F.3d at 907; United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001).

[6]See Levert-Woitalla v. Carver County, Civil No. 12-238 (JRT/JJK) 2012 WL 684121 at ***3-4 (D. Minn. Mar. 2, 2012); compare United States v. Poe, 462 F.3d 997, 1000 (8th Cir. 2006); Conner, 127 F.3d at 666 & n.2.

6

room. This being the case, the entry into the room, the officer's observations within and Circle Bear's arrest need not be suppressed.

## B. Statements in the Motel Room
### 1. Pre-Arrest Statements

Circle Bear next claims his pre-arrest statements to Officer Kennedy were obtained in violation of *Miranda*. He contends he was detained and questioned without any *Miranda* advisement. The issue is whether he was in custody when he made his statements to the officer in the motel room. If so, the statements must be suppressed because the officer gave him no *Miranda* warnings before the questioning. If not, then the statements are admissible as substantive evidence.

The requirements of *Miranda* are triggered only when a suspect is both in custody and being interrogated.[7] "Custody occurs when [the] suspect is deprived of his freedom of action in any significant manner."[8] The "ultimate inquiry" in the custody determination "is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."[9] "Two discrete inquiries are essential to [this] determination: first, what were the circumstances surrounding the

---

[7]*See United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005), *cert. denied*, 547 U.S. 1082 (2006).

[8]*United States v. Axsom*, 289 F.3d 496, 500 (8th Cir. 2002).

[9]*United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (*en banc*) (*quoting California v. Beheler*, 463 U.S. 1121, 1125 (1983) (*per curiam*)), *cert. denied*, 543 U.S. 1145 (2005).

7

interrogation; and second, given those circumstances, would a reasonable person have felt he [ ] was at liberty to terminate the interrogation and leave."[10]  In making these inquiries, a court must "look at the totality of the circumstances while keeping in mind that the [custody] determination is based on the objective circumstances of the interrogation, not the subjective views harbored by either the interrogation officer[ ] or the person being questioned.'"[11]

After due consideration of the circumstances present, the Court concludes Circle Bear was not in "custody" within the meaning of *Miranda*.  The interview occurred in his own motel room and was of short duration.  The queries were modest in number and he was never asked about the rape allegation.  In speaking with Circle Bear, Officer Kennedy was engaged in on-the-scene fact finding, following up on information R.H. had just provided.  Circle Bear was not handcuffed or physically restrained; instead, he was free to move about the room and did so.  He voluntarily acquiesced to questions posed to him, candidly acknowledging he and R.H. (who he knew was only 17 years old at the time) had drank alcoholic beverages that night.  Significantly, he denied having any scratches on his back and made no statements implicating himself in any sex acts involving R.H..  No strong-arm tactics or deceptive stratagems were employed

---

[10]*J.D.B. v. North Carolina*, 131 S.Ct. 2394, 2402 (2011) (*quoting Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

[11]*LeBrun*, 363 F.3d at 720 (*quoting Stansbury v. California*, 511 U.S. 318, 322-23 (1994)).

to get him to talk. Nor was there any physical contact or weapons ever displayed. The atmosphere was not police dominated – Officer Kennedy was the only other person present – and the officer's position, in relation to the door, was simply the result of the size and layout of the room rather than any show of force or action. Circle Bear also was not arrested and shackled until he got dressed and had all but his shoes on.

Granted, Circle Bear was never informed he was free to leave and not under arrest. And he was ultimately arrested and manacled after being questioned. But these facts are not dispositive. A court must consider all of the historical facts, not just the absence or presence of certain judicially-created "indicia" that ostensibly tend to aggravate or mitigate the existence of custody. The essential inquiry must always be whether the suspect was restrained as though he was under formal arrest.[12]

While conceding he was not in custody at first, Circle Bear nonetheless maintains his interview became custodial when he admitted to drinking with R.H. But Officer Kennedy's internal decision – after this admission -- not to let Circle Bear leave and to arrest him, did not transform the encounter into a custodial one. The officer did not say or provide any indication of what his thoughts or intentions were until he announced

---

[12]*See United States v. Czichray*, 378 F.3d 822, 828 (8th Cir. 2004), *cert. denied*, 544 U.S. 1060 (2005); *see also United States v. Brave Heart*, 397 F.3d 1035, 1039 (8th Cir. 2005) (the factors in *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) "are by no means exhaustive and should not be applied ritualistically, counting indicia which contribute to custody against those which detract"); *LeBrun*, 363 F.3d 719-24 (resolving the custody issue with nary a mention of *Griffin*).

Circle Bear was being arrested for the contributing to the delinquency offense. The questioning likewise did not magically become custodial simply because of Circle Bear's inculpatory remarks. Nothing in the environment or in the officer's treatment of Circle Bear changed until the arrest was made. Custody must be determined by viewing the entirety of the situation through an objective, not a subjective, lens.[13]

Having studied the scene and reconstructed the events of that early morning, the Court is convinced a reasonable person in Circle Bear's position would not have understood he was in custody while briefly conversing with Officer Kennedy in the "comforts" of his own motel room.[14] The officer, thus, was not required to warn Circle

---

[13]*See Stansbury*, 511 U.S. at 323-25; *see also Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("Although [the trooper] apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged with a traffic offense, [the trooper] never communicated his intention to respondent. A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."); *Beckwith v. United States*, 425 U.S. 341, 346-47 (1976) (it "was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the court to impose the *Miranda* requirements"); *United States v. Harris*, 611 F.2d 170, 171-73 (6th Cir. 1979) (no custody requiring *Miranda* warnings where, despite agent's testimony that he would not have allowed defendant to leave the motel room, defendant was never been informed of agent's intentions and never requested to leave).

[14]*See Beckwith*, 425 U.S. at 346-48 & n.7; *United States v. Williams*, 760 F.3d 811, 815 (8th Cir. 2014); *United States v. Huether*, 673 F.3d 789, 794-95 (8th Cir. 2012); *United States v. Perrin*, 659 F.3d 718, 720-21 (8th Cir. 2010); *United States v. Krehbiel*, 378 Fed. Appx. 832, 835-36 (10th Cir. 2010); *Harris*, 611 F.2d at 171-73; *United States v. Nunez-Medina*, Criminal No. 12-22 (MJD/AJB), 2012 WL 6840113 at **2, 6 (D. Minn. Oct. 31, 2012), *report and recommendation adopted*, 2013 WL 140326 (D. Minn. Jan. 11, 2013); *United States v.*
(continued...)

Bear of his Fifth Amendment privilege against self-incrimination and his right to the assistance of counsel, as required by *Miranda*, before communicating with him. Inasmuch as the precepts of *Miranda* were adhered to, Circle Bear's attempt to suppress his pre-arrest statements must fail.

### 2. Post-Arrest Statements

As for the suppression of Circle Bear's post-arrest statements allegedly elicited before he was jailed, there do not appear to be any. The evidentiary hearing transcript does not contain any statements he made -- in response to interrogation – between his arrest and confinement. Nor does he point to any for the Court to consider and rule on. His motion then should be denied for lack of an identifiable *Miranda* violation.

---

*Johnson*, No. 07-CR-181, 2008 WL 238954 at **3-6 (E.D. Wis. Jan. 28, 2008); *Deans v. Hetzel*, 15 F.Supp.2d 1067, 1068, 1072-73 (D. Kan. 1998); *see also Miranda v. Arizona*, 384 U.S. 436, 477-78 (1966) ("General on-the-scene questioning as to facts surrounding a crime or other questioning of citizens in the fact finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations, the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present"); *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1126-27 (9th Cir. 2005) (defendant was not in custody when he entered motel room and was questioned while consensual search for narcotics was underway and before being handcuffed); *United States v. Burns*, 37 F.3d 276, 277-78, 281 (7th Cir. 1994) (suspect who was questioned while officers executed a search warrant and before he was arrested was not in custody), *cert. denied*, 515 U.S. 1149 (1995); *see generally* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*, §6.6(e) (3d ed. 2007 & 2013-14 Supp.).

## C. Search and Seizure of Evidence

Circle Bear also claims that Officer Kennedy illegally seized evidence (bedding, a towel and blanket, clothing and a loofah) from the motel room. According to Circle Bear, the officer had no right to be where he was, when he discovered this evidence or to take it without a search warrant.

The Supreme Court has long recognized that, in certain circumstances, a warrantless seizure of items come upon by the police "in plain view" during a lawful search of a home may be reasonable under the Fourth Amendment.[15] The Court has made clear "[t]he plain-view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy."[16]

"The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity."[17] Police officers may therefore seize incriminating evidence in "plain view" during the course of a lawful search because such a seizure

---

[15]*See Horton v. California*, 496 U.S. 128, 133-37 (1990); *Arizona v. Hicks*, 480 U.S. 321, 323 (1987); *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).

[16]*Illinois v. Andreas*, 463 U.S. 765, 771 (1983).

[17]*Payton*, 445 U.S. at 587.

"does not involve a privacy intrusion."[18]  The practical justification for the doctrine is "the desirability of sparing police, whose viewing of the object in the course of a lawful search is as legitimate as it would have been in a public place, the inconvenience and the risk – to themselves or to preservation of the evidence – of going to obtain a warrant."[19]  The doctrine also "reflects the fact that requiring police to obtain a warrant once they have obtained a first-hand perception of contraband, stolen property, or incriminating evidence generally would be a 'needless inconvenience' that might involve danger to the police and public."[20]

To invoke the "plain view" doctrine, the following requirements must be satisfied:  (1) a police officer's initial intrusion must be lawful or the officer must otherwise properly be in a position from which he can view a particular area; (2) the incriminating character of the evidence must be "immediately apparent"; and (3) the officer must have a lawful right of access to the object itself.[21]

The requirement that an object's incriminating nature be "immediately apparent" assures that the doctrine is not used to engage in "a general exploratory

---

[18]See Horton, 496 U.S. at 141.

[19]Hicks, 480 U.S. at 327.

[20]Texas v. Brown, 460 U.S. 730, 739 (1983) (internal citation omitted).

[21]See Horton, 496 U.S. at 136-37; United States v. Wilson, 565 F.3d 1059, 1064-65 (8th Cir. 2009), cert. denied, 558 U.S. 1117 (2010); United States v. Khabeer, 410 F.3d 477, 482-83 (8th Cir. 2005).

13

search from one object to another until something incriminating at least emerges."[22] "Immediately apparent", however, does not mean that a police officer must be nearly certain as to the criminal nature of the item,[23] but rather, only that he have probable cause to believe the object is associated with some kind of criminal conduct.[24]

"Probable cause is a flexible, common-sense standard."[25]  All it requires is a "practical, non-technical probability that incriminating evidence is involved."[26] Whether probable cause exists is determined based on an evaluation of the "facts" viewed from the standpoint of an objectively reasonable police officer,"[27] and "not on the officer's actual state of mind at the time the challenged action was taken."[28] The probable cause determination, hence, is an objective one.

Applying these principles at bar, the Court concludes that the three requirements to invoke the plain view doctrine were all met.  Officer Kennedy had consent to enter and be in the motel room.   The incriminating nature of the items seized was immediately apparent to the officer and tribal police at the time.  In other words, the

---

[22]*Coolidge*, 403 U.S. at 466.

[23]*See Brown*, 460 U.S. at 741-42.

[24]*See Hicks*, 480 U.S. at 326; *Brown*, 460 U.S. at 741-42.

[25]*Brown*, 460 U.S. at 742.

[26]*Id.*

[27]*Ornelas v. United States*, 517 U.S. 690, 696 (1996).

[28]*Maryland v. Macon*, 472 U.S. 463, 470-71 (1985).

14

officer and police – through the collective knowledge doctrine[29] – had probable cause to believe the items observed in the room were evidence of a sex or other crime.  Finally, Officers Kennedy and Lafferty, functioning as a search "team," had a lawful right of access to the items that were seized.

It does not matter whether Officer Kennedy's entry into the room was for the purpose of investigating a certain offense because the items seized need not necessarily relate to that offense.[30]  And there is no merit to the contention that the warrantless and after-the-fact search and seizure of items was illegal because the officer was lawfully present in the room (having been given consent to enter the same) and Circle Bear no longer enjoyed a reasonable expectation of privacy in it.[31]

---

[29]See Wilson, 565 F.3d at 1065; United States v. Armstrong, 554 F.3d 1159, 1163 (8th Cir.), cert. denied, 557 U.S. 910 (2009); United States v. Banks, 514 F.3d 769, 775-76 (8th Cir.), cert. denied, 553 U.S. 1100 (2008).

[30]See Wilson, 565 F.3d at 1065 (entry to arrest for being a felon in possession of a firearm; lawful plain view seizure of video camera as officer recognized it as one used in earlier child pornography activity by defendant); United States v. Looney, 481 F.2d 31, 32-34 (5th Cir.) (defendant's sub machine gun was properly seized when it was found incident to police entry of home of defendant's father to search for and arrest another person wanted on narcotics charge), cert. denied, 414 U.S. 1070 (1973).

[31]See United States v. Varner, 481 F.3d 569, 573; see also United States v. Arcobasso, 882 F.2d 1304, 1305 (8th Cir. 1989) (officer re-entered house to retrieve ammunition when arrestee acknowledged ownership and firing of guns); Wengert v. State, 364 Md. 76, 93-96, 771 A.2d 389, 399-401 (2001) (collecting cases).

### D.    Statements at the Law Enforcement Center

As further grounds for suppression, Circle Bear claims (1) the statements he gave to Detective Runs After and Officer Lafferty at the Law Enforcement Center were involuntary under the Fifth Amendment and (2) the waiver of his *Miranda* rights was invalid.  He seeks to exclude these statements, presumably as both substantive and impeachment evidence.

#### 1.    Voluntariness

At the outset, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of *Miranda* are rare."[32]  That is not to say compliance with *Miranda* conclusively establishes the voluntariness of later made statements.[33]  Circle Bear's *Miranda* advisements though make it much more difficult for him to rebut the Government's assertion that his statements to Detective Runs After and Officer Lafferty were voluntary.

Due process requires guilt-laden statements or "confessions" be voluntary.[34]  A statement is voluntary if it is "the product of an essentially free and unconstrained

---

[32]*Dickerson v. United States,* 530 U.S. 428, 444 (2000) (*quoting Berkemer,* 468 U.S. at 433, n.20).

[33]*See Berkemer,* 468 U.S. at 433, n.20.

[34]*See Brown v. Mississippi,* 297 U.S. 278, 285-86 (1936); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 225-26 (1973) (a voluntary confession may be used against a suspect, but an involuntary one offends due process).

choice by its maker."[35]  Conversely, "[a] statement is involuntary when it [is] extracted by threats, violence or express or implied promises sufficient to overbear [the suspect's] will and critically impair his capacity for self-determination."[36]

The "totality of the circumstances" must be considered when determining whether statements were made voluntarily.[37]  When doing so, a court must focus on two factors: "the conduct of the officers and the characteristics of the [suspect]."[38]  "The [G]overnment bears the burden of persuasion and must prove by a preponderance of the evidence the challenged statements were voluntary."[39]

After weighing Detective Runs After's testimony and considering the evidence presented, the Court concludes the requisite coercive or overreaching conduct necessary to render Circle Bear's statements involuntary is lacking.  Several facts support this conclusion.

At no time did Detective Runs After or Officer Lafferty make any threats or promises to Circle Bear or yell, raise their voices, or become hostile toward him.  Nor did they brandish their weapons or lay a hand on him.  Based on Circle Bear's age,

---

[35]*Schneckloth*, 412 U.S. at 225.

[36]*LeBrun*, 363 F.3d at 724.

[37]*Id.*

[38]*Id.*

[39]*Id.*

education, background and conduct that day, he did not appear low functioning or particularly suggestible and vulnerable to questioning by authority figures. His responses to inquiries also cogently established he was not under the influence of alcohol or drugs and was not suffering from any mental or physical afflictions. And importantly, he did not admit to having any sexual contact with R.H., provided a buccal swab, allowed Detective Runs After to photograph his back and proclaimed his innocence saying "I didn't do anything."

The record as a whole unequivocally shows that Circle Bear's statements were voluntary. The statements were ones he wanted to make and were not the product of coercive questioning that overbore his will and acutely impaired his decision-making capacity.

## 2. Waiver

The statements of a suspect made during custodial interrogation, are inadmissible at trial unless the prosecution can establish that the suspect knowingly and voluntarily waived his *Miranda* rights when making the statements.[40] The relevant inquiry "has two distinct dimensions": the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception" and it must be made "with the full awareness of both the nature of the right

---

[40]*See North Carolina v. Butler,* 441 U.S. 369, 373 (1979).

being abandoned and the consequences of the decision to abandon it."[41] "[T]he totality of the circumstances surrounding the interrogation" must be considered when determining the enforceability of the waiver.[42]

The same analysis concerning the voluntariness of a suspect's statements under the Fifth Amendment applies to determine whether the suspect's *Miranda* waiver was voluntary.[43] Under either analysis, "[a]bsent evidence that the [suspect's] will [was] overborne and his capacity for self-determination critically impaired because of coercive police conduct," a waiver of *Miranda* rights will be considered voluntary.[44]

The Court has already determined that Detective Runs After and Officer Lafferty did not threaten or intimidate Circle Bear in any way to obtain his statements and that there was no coercion or overreaching. Circle Bear was read his rights and made a free and deliberate choice to relinquish them and speak with the officers.

As for the second inquiry, the written waiver Circle Bear signed itself constitutes strong evidence he had a clear understanding of his rights and gave them up.[45]

---

[41]*Moran v. Burbine*, 475 U.S. 412, 421 (1986).

[42]*Id.*

[43]*See United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995) (a court must consider the conduct of the police when determining whether defendant's will was overborne for either his confession or his *Miranda* waiver).

[44]*Colorado v. Spring*, 479 U.S. 564, 574 (1987).

[45]*See Butler*, 441 U.S. at 373 ("an express written . . . waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver").

Detective Runs After read out loud to Circle Bear the advice of rights form and initialed each of the rights after Circle Bear indicated he understood them.  The detective then explained the waiver portion of the form, requested Circle Bear to read it, and if he had any questions or did not understand something, to let the detective know.  Moments later, Circle Bears signed the waiver.

Beyond this, the record otherwise establishes that Circle Bear validly waived his *Miranda* rights.  There is no basis to conclude that Circle Bear did not understand his rights and it follows that he chose not to invoke or rely on them when he spoke to Detective Runs After and Officer Lafferty.

First, credible evidence proves Circle Bear was both mindful and appreciative of his rights and what he was doing.[46]  He verbally confirmed knowing what his rights were and then talked with Detective Runs After and Officer Lafferty.  And Circle Bear was 51 years old, worked for a newspaper and nothing about his intelligence or mental ability was concerning.

Second, Circle Bear's willingness to engage in a colloquy without the benefit of counsel and make statements – some of which were incriminating – was a "course of conduct indicating waiver" of his rights.[47]  If Circle Bear wanted to remain silent, he could have said nothing in response to Detective Runs After's questions or he could

---

[46]*See Berghuis v. Thompkins,* 560 U.S. 370, 385-86 (2010); *Burbine,* 475 U.S. at 421.

[47]*See Berghuis,* 560 U.S. at 386; *Butler,* 441 U.S. at 373.

have unambiguously invoked his *Miranda* rights and ended the interrogation. Circle Bear likewise could have terminated the interview by requesting to consult with a lawyer or to have one present with him during questioning. The fact that he did neither ratifies his desire to waive his rights.[48]

Third, there is no evidence whatsoever Circle Bear's statements were coerced.[49] At no time did Detective Runs After or Officer Lafferty employ any rubber hose tactics to get him to say or do anything against his will. Circle Bear communicated in a rational manner and appeared to be in complete control of his faculties. He also possessed the wherewithal and fortitude to insist he was innocent and had enough confidence in what DNA testing would reveal to provide officers with a buccal swab.

In the final analysis, this is not one of those "rare" instances in which a suspect, after being properly advised of his *Miranda* rights, failed to make an open and autonomous decision to speak with probing officers and incriminate himself. On this record, Circle Bear's uncoerced statements, made after being apprised of and  waiving his rights, are admissible in the Government's case-in-chief at trial.

## E. Tainted Fruit

Circle Bear lastly claims the evidence seized from his motel room and his statements, both in the room and at the Law Enforcement Center, were the poisonous

---

[48]*See Berghuis*, 560 U.S. at 386.

[49]*See Burbine*, 475 U.S. at 421.

fruit of an illegal entry and arrest. These illegalities, he says, require suppression of this evidence and his statements under the exclusionary rule.[50]

Circle Bear's claim in unavailing. Officer Kennedy had consent to enter the room and probable cause to arrest Circle Bear tribally for contributing to the delinquency of a minor. And the bedding, towel, blanket, clothing and loofah were properly found in plain view and taken without encroaching upon the Fourth Amendment. There being no poisonous tree from which any tainted fruit could fall,[51] the evidence seized and Circle Bear's statements to tribal officers are all admissible at trial.

## CONCLUSION

Circle Bear consented to Officer Kennedy entering the motel room. The officer also had probable cause to arrest Circle Bear for the contributing to the delinquency charge based on what the officer saw and had been told.

Circle Bear was not in custody when he talked to Officer Kennedy in the room before being arrested. The surroundings were familiar or at least "neutral" and Circle Bear had not been arrested or subject to the restraints akin to a formal arrest.

---

[50]*See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963) (admissions by a defendant that flow from a Fourth Amendment violation must be suppressed).

[51]*See United States v. Hessman*, 369 F.3d 1016, 1024 (8th Cir. 2004), *cert. denied*, 543 U.S. 1072 (2005).

The statements at the Law Enforcement Center, seven hours later, were made in compliance with the Fifth Amendment and *Miranda*.  Circle Bear was advised of his rights and knowingly, voluntarily and intelligently waived them without being coerced.

And both sets of statements – pre- and post-arrest – were not the byproduct or "tainted" fruit of any Fourth Amendment violation.  So they did not fall prey to the jaws of the exclusionary rule.

## RECOMMENDATION

For the reasons, and based on the authorities, set forth in this report, it is hereby RECOMMENDED that Circle Bear's Motion to Suppress Evidence and Statements[52] be denied in its entirety.

## NOTICE

An aggrieved party has 14 calendar days after service of this report and recommendation to file written objections to the same,[53] unless an extension of time for cause is obtained.[54]  Failure to file timely objections will result in the waiver of the right

---

[52]*See* Dkt. No. 27.

[53] *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[54]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black,* 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

to appeal questions of fact.[55]  Objections must "identify[ ] those issues on which further review is desired[.]"[56]

DATED this __9ᵗʰ__ day of March, 2015.

BY THE COURT:

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

RECEIVED

MAR - 9 2015

CLERK, U.S. DISTRICT COURT
PIERRE S.D.

---

[55]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[56]*Arn*, 474 U.S. at 155.