UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

FILED
MAY 0 1 2015
[signature] CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONNIE KEITH CIRCLE BEAR,<br><br>Defendant. | 3:14-CR-30122-RAL<br><br>OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMENDATION |

Cheyenne River Sioux Tribe police officers arrested Defendant Ronnie Keith Circle Bear in his motel room. They seized certain evidence and questioned him both in the room and at the tribal police department. Circle Bear moved to suppress the evidence and statements, alleging violations of the Fourth and Fifth Amendment as well as the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436 (1966). Magistrate Judge Mark A. Moreno recommended denying Circle Bear's motion and Circle Bear has now filed objections to that recommendation. For the reasons explained below, this Court adopts the Report and Recommendation in part.

I. Facts

In the early morning of June 24, 2014, Cheyenne River Sioux Tribe Police Officers Clayton Kennedy and Milo Lafferty responded to a report that a juvenile female was requesting help at the Cheyenne River Motel in Eagle Butte, South Dakota. T. 12, 82. The female was visibly upset and appeared intoxicated when the officers located her at a convenience store near the motel. T. 17, 19, 84–85, 99–100. She informed the officers that her name was R.H., that she was seventeen years old, and that her uncle Ron Circle Bear had forced her to drink alcohol before he raped her in room 202 of the Cheyenne River Motel. T. 24, 85–86.

1

Officer Kennedy went to the motel to speak with Circle Bear while Officer Lafferty took R.H. to the hospital. T. 25. Officer Kennedy knocked on the door of room 202 several times before Circle Bear answered. T. 28. He wore nothing but underwear and appeared intoxicated. T. 28, 44–45. Officer Kennedy identified himself and asked if he could enter. T. 29. Without saying anything, Circle Bear opened the door wider and waved Officer Kennedy in. T. 29.

Once inside, Officer Kennedy asked if Circle Bear had anybody staying with him. T. 29. Circle Bear replied that he did not. T. 29. When Officer Kennedy inquired if he was sure, Circle Bear said that his niece R.H. was staying in the room. T. 29–30. Officer Kennedy observed vodka in the room and Circle Bear opened the door of a small refrigerator to show Officer Kennedy a bottle of schnapps and a juice container. T. 31, 92.[1] Officer Kennedy asked Circle Bear if R.H. had been drinking alcohol with him, and Circle Bear conceded that she had. T. 37, 48–49. Officer Kennedy then questioned Circle Bear about R.H.'s whereabouts. T. 30, 49. Circle Bear initially said he did not know where R.H. was, then explained that she was with a friend, and ultimately said that she had left with friends whom he was unable to name or describe. T. 32–33.

At some point while Circle Bear was getting dressed, Officer Kennedy noticed scratch marks on his back. T. 34–36. He asked Circle Bear about the scratches but Circle Bear denied having any. T. 36. Thereafter, Officer Kennedy arrested Circle Bear for the tribal charge of contributing to the delinquency of a minor. T. 36–37. Another officer arrived at approximately 1:30 a.m. and transported Circle Bear to the Cheyenne River Law Enforcement Center where he was booked and held. T. 40, 52. Officer Kennedy remained behind in the room. T. 40.

---

[1] Officer Lafferty, who arrived later to the room, recalled seeing one of the schnapps bottles in the refrigerator but the other three liquor bottles–two vodka bottles and another schnapps bottle–being in Circle Bear's bag. T. 94; Ex. A-19.

2

Officer Lafferty arrived at the room around forty-five minutes later. T. 54. He and Officer Kennedy took photographs of the room and seized bedding, a towel, a blanket, clothing, and a loofah. T. 41, 96–97, 103; Ex. B.

At approximately 8:30 a.m. that morning, Detective Gordon Runs After and Officer Lafferty met with Circle Bear in a briefing room at the Law Enforcement Center. T. 97, 111–13. Before any questioning, Detective Runs After read Circle Bear his <u>Miranda</u> rights, pausing after each line for Circle Bear to say that he understood. T. 98, 113–15, 123; Ex. C. Circle Bear signed a form stating that he voluntarily waived his rights, after which he admitted to drinking with R.H. but denied sexually assaulting her. T. 98, 113–15, 123; Exs. C, D.

A grand jury indicted Circle Bear for aggravated sexual abuse by force and sexual abuse of a person incapable of consenting. Doc. 1. Circle Bear moved to suppress the evidence seized from his motel room and his statements in the room and at the Law Enforcement Center. Docs. 27, 28. Judge Moreno held an evidentiary hearing during which he received several exhibits into evidence, including photos of the motel room, a list of the evidence seized from the room, and the waiver of rights form Circle Bear signed. Judge Moreno also heard testimony from Officer Kennedy, Officer Lafferty, and Detective Runs After. Judge Moreno issued a Report and Recommendation recommending that Circle Bear's motion be denied. Doc. 40. Circle Bear now objects to the Report and Recommendation, arguing that the warrantless entry of his motel room and the seizure of evidence therein violates the Fourth Amendment, that his statements in the room after he admitted to drinking with R.H. were obtained in violation of <u>Miranda</u>, and that his statements at the Law Enforcement Center were involuntary and made without a valid waiver of his <u>Miranda</u> rights. Doc. 44.

This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Having conducted a de novo review, this Court adopts the vast majority of the Report and Recommendation, but reserves ruling on whether three of the items seized from the motel room are admissible.

## II. Discussion

### A. Warrantless Entry into Motel Room

The warrantless entry of a motel room violates the Fourth Amendment unless the occupant consents or there are exigent circumstances. Steagald v. United States, 451 U.S. 204, 211 (1981); Stoner v. California, 376 U.S. 483, 490 (1964). Judge Moreno found that Circle Bear impliedly consented to Officer Kennedy's entry by opening the door wider and waiving Officer Kennedy in. See United States v. Sabo, 724 F.3d 891, 893–94 (7th Cir. 2013) (holding that defendant consented to entry of home by stepping back and to the side of doorway in response to officer's request to enter); United States v. Smith, 973 F.2d 1374, 1376 (8th Cir. 1992) (finding consent by a resident who stepped aside and motioned officers in). Circle Bear objects to this finding, arguing that his intoxication renders his consent involuntary.

"The government bears the burden of proving voluntary consent by a preponderance of the evidence and must show that on the totality of the circumstances the officer reasonably believed that the search was consensual." United States v. Almendares, 397 F.3d 653, 660 (8th Cir. 2005). A defendant's intoxication is relevant to the voluntariness determination but does not alone vitiate his consent. United States v. Watters, 572 F.3d 479, 483 (8th Cir. 2009). Rather,

4

"[i]n each case, the question is one of mental awareness so that the act of consent was the consensual act of one who knew what he was doing and had reasonable appreciation of the nature and significance of his actions." Id. (quoting United States v. Castellanos, 518 F.3d 965, 969 (8th Cir. 2008)).

Here, the record establishes that Circle Bear was intoxicated, but not to the extent that he was incapable of voluntarily consenting to the entry of his room. Although Officer Kennedy testified that Circle Bear had bloodshot eyes and smelled of alcohol when he answered the door, T. 28, 44, Circle Bear's waving Officer Kennedy inside in response to Officer Kennedy's request to enter suggested that Circle Bear knew what he was doing. Once Officer Kennedy had entered the room, Circle Bear provided rational answers to Officer Kennedy's questions, at first denying but then admitting that R.H. was staying with him, offering an explanation for R.H.'s absence, and stating his name and where he was from.[2] T. 29–40. Rather than objecting to Officer Kennedy's presence in the room, Circle Bear opened the refrigerator and showed Officer Kennedy its contents. T. 31. Further, Circle Bear was able to dress himself, T. 34, and Officer Kennedy testified that he believed that Circle Bear "knew what was going on." T. 39. Based upon the totality of the circumstances, it was reasonable for Officer Kennedy to believe that Circle Bear voluntarily consented to the entry of his room by opening the door and waving him in; Circle Bear's actions after Officer Kennedy entered the room demonstrate that Circle Bear had a reasonable appreciation of the nature and significance of his actions, and was therefore

---

[2]At one point, the Government asked Officer Kennedy whether Circle Bear responded to questions appropriately. Officer Kennedy stated: "All I would get was 'I don't know.'" T. 39–40. Circle Bear points to this testimony in his objections to Judge Moreno's conclusion that Circle Bear consented to the entry. A reading of Officer Kennedy's entire testimony, however, shows that Circle Bear only said he didn't know when asked about where R.H. was and about his story that R.H. had left with some friends. T. 29–40. Circle Bear still responded appropriately to the questions set forth above.

capable of consenting to the entry. See United States v. Willie, 462 F.3d 892, 896–97 (8th Cir. 2006) (affirming district court's decision that defendant voluntarily consented to search despite being under the influence of methamphetamine where defendant cooperated with police, responded to questioning, and knew the number of the motel room where he was registered); United States v. Rambo, 789 F.2d 1289, 1297 (8th Cir. 1986) (upholding district court's decision that defendant voluntarily consented to search where defendant was using drugs and "highly disturbed," but answered questions intelligently, assisted officers in locating his identification, and provided an explanation for the drugs found in his luggage). Circle Bear's objection to the contrary is overruled.

Circle Bear objects also to his arrest on the ground that it was the "fruit" of an illegal entry into his motel room. See Wong Sun v. United States, 371 U.S. 471 (1963). Because Officer Kennedy's entry was not illegal, Circle Bear's objection is overruled.

### B. Pre-Arrest Statements in Motel Room

Circle Bear argues next that some of his pre-arrest statements in the motel room should be suppressed because he never received Miranda warnings. Miranda requires police officers to give suspects in custody certain warnings before interrogating them. 384 U.S. at 444. Statements obtained in violation of Miranda are generally inadmissible in the government's case-in-chief. Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam). The rule in Miranda only applies, however, "where there has been such a restriction on a person's freedom as to render him 'in custody.'" J.D.B. v. North Carolina, 131 S. Ct. 2394, 2402 (2011) (quoting Stansbury, 511 U.S. at 322) (internal quotation marks omitted). Judge Moreno concluded that Circle Bear's pre-arrest statements were admissible under Miranda because Circle Bear was not in custody when he made them. Circle Bear concedes that he was not in custody at first, T. 132,

but argues that the interview became custodial once he admitted to drinking with R.H. Accordingly, Circle Bear contends that the statements he made after his admission—namely his explanation of R.H.'s whereabouts and his denial of the scratch marks on his back—must be suppressed.

The "ultimate inquiry" in the custody determination is "whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury, 511 U.S. at 322 (alteration in original) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)) (internal quotation marks omitted). To answer this inquiry, courts consider whether, given all of the circumstances surrounding the interrogation, a reasonable person would have felt at liberty to terminate the interrogation and leave. J.D.B., 131 S. Ct. at 2402; see also Howes v. Fields, 132 S. Ct. 1181, 1189 (2012) (listing factors relevant to custody determination); United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990) (identifying six non-exclusive factors for determining whether a suspect is in custody). Because the custody determination focuses on how a reasonable person in the suspect's position would have felt, the "'subjective views harbored by either the interrogating officers or the person being questioned' are irrelevant." J.D.B., 131 S. Ct. at 2402 (quoting Stansbury, 511 U.S. at 323).

Considering all of the circumstances surrounding the interview, Circle Bear was not in custody until he was formally arrested. First, the interview took place in Circle Bear's motel room rather than in the inherently coercive atmosphere of a police station. See United States v. Williams, 760 F.3d 811, 815 (8th Cir. 2014) (explaining that courts are less likely to find the circumstances custodial when the suspect is questioned "on his own turf" (quoting United States v. Rorex, 737 F.2d 753, 756 (8th Cir. 1984))). Second, the interview was brief and was not police dominated—Officer Kennedy was the only officer present and asked Circle Bear a modest

number of questions. T. 32–36, 45; see United States v. Wallace, 323 F.3d 1109, 1113 (8th Cir. 2003) (finding that defendant was not in custody because, among other reasons, the interview was short and conducted by a single agent). Third, Circle Bear was allowed to move about the room freely and continue getting dressed even after he confessed to drinking with R.H. T. 34–37; see Griffin, 922 F.2d at 1350 (noting that unrestrained movement suggests that an interview is noncustodial). Finally, Officer Kennedy did not deploy any strong-arm tactics or deception to encourage Circle Bear to speak. Griffin, 922 F.2d at 1351 (stating that the absence of strong-arm tactics "is a factor which can assist us in reaching an objective conclusion that the suspect could not have associated the questioning with formal arrest").

To be sure, there are some factors that weigh in favor of finding that Circle Bear was in custody once he confessed to drinking with R.H. A suspect may feel less freedom to terminate an interview and leave if he is confronted with evidence of his guilt or makes incriminating admissions. See Stansbury, 511 U.S. at 325 (explaining that an officer's beliefs "concerning the potential culpability of" a suspect is relevant to the custody determination if the suspect is aware of these beliefs); Griffin, 922 F.2d at 1348 ("[T]he fact that the individual has become the focus of the investigation is relevant 'to the extent that the suspect is aware of the evidence against him' and this awareness contributes to the suspect's sense of custody." (quoting United States v. Carter, 884 F.2d 368, 370 (8th Cir. 1989))). Further, Officer Kennedy never informed Circle Bear that he was free to leave, T. 68, and ultimately arrested Circle Bear after concluding the interview, T. 36–37. See Griffin, 922 F.2d at 1349–50 (stating that the arrest of a suspect at the end of questioning is a factor that tends to aggravate the existence of custody and that the absence of a police advisement that a suspect is not under arrest "has been identified as an

8

important indicium of the existence of a custodial setting"). Nevertheless, Circle Bear's argument that he was in custody once he admitted to drinking with R.H. falls short.

An interview does not automatically become custodial upon a suspect's confession. See Locke v. Cattell, 476 F.3d 46, 53 (1st Cir. 2007) ("[N]o Supreme Court case supports [the] contention that admission to a crime transforms an interview by the police into a custodial interrogation."). Rather, courts look to the severity of the crime confessed to and whether the circumstances of the interview changed to determine if a suspect's confession rendered a previously noncustodial situation custodial. See United States v. Chee, 514 F.3d 1106, 1114 (10th Cir. 2008) (finding that defendant's confession to rape did not make interview custodial where the environment of the interview remained the same); United States v. Casmento, 998 F. Supp. 372, 375 (S.D.N.Y. 1998) (holding that defendant was not in custody even after he confessed to unlawfully possessing a firearm because the officers did not make a showing of force and the crime defendant confessed to "did not immediately suggest the likelihood of an arrest"). Similarly, a suspect's arrest at the end of an interview and the absence of a police advisement that the suspect is free to leave are but two factors to consider in the custody analysis. The weight assigned to these factors depends on the circumstances of the particular case. See United States v. Castillo-Martinez, 451 F. App'x 615, 618–19 (8th Cir. 2012) (per curiam) (holding that suspect was not in custody despite being arrested at end of encounter where he was not handcuffed until arrest, he remained calm and cooperative, and there was no evidence that officers blocked his exit or used strong-arm tactics); United States v. Lowen, 647 F.3d 863, 868 (8th Cir. 2011) (holding that suspect was not in custody even though officers never informed him that he was not under arrest); United States v. Flores-Sandoval, 474 F.3d 1142, 1147 (8th Cir. 2007) (holding that suspect was not in custody although he was arrested at

9

end of questioning and was never informed that he could leave); United States v. Schildt, No. 4:11CR3138, 2012 WL 1574421, at *3–4 (D. Neb. Apr. 11, 2012) (holding that suspect was not in custody despite being arrested at end of interview and never being told that he was free to leave), adopted by 2012 WL 1574342 (May 3, 2012).

Given the totality of the circumstances, the motel room interview was not rendered custodial by Officer Kennedy's failure to advise Circle Bear that he could leave, Circle Bear's admission to drinking with R.H., and Circle Bear's subsequent arrest. To begin with, Circle Bear was not restrained and was free to move about the room. Next, it is unclear whether Circle Bear even knew that he confessed to a crime. Officer Kennedy testified that Circle Bear admitted to drinking alcohol with his niece R.H. T. 37, 48–49. Circle Bear did not tell him R.H.'s age. Rather, Officer Kennedy testified that he learned how old R.H. was from his meeting with her at the convenience store, T. 37–38, and there is no evidence to suggest that Circle Bear was aware of this meeting. Because it is entirely plausible that a fifty-one-year-old man like Circle Bear could have a niece who was twenty-one or older, Circle Bear may not have thought it incriminating to admit to Officer Kennedy that he was drinking with R.H.

Yet even assuming that Circle Bear was aware that he had confessed to contributing to the delinquency of a minor, this crime is not so serious that it "immediately suggest[s] the likelihood of an arrest."[3] Casmento, 998 F. Supp. at 375; cf. Stansbury, 511 U.S. at 325 ("Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest."). True, Officer Kennedy knew of R.H.'s rape allegations against

---

[3]Officer Kennedy testified that the Tribe has class A, B, and C offenses with A being the highest and C the lowest. T. 64. Contributing to the delinquency of a minor is a class B offense and officers may arrest a suspect if they have probable cause to believe that a suspect has committed a class B offense. T. 64.

10

Circle Bear, but this knowledge did not contribute to Circle Bear's sense of custody because Officer Kennedy never informed Circle Bear of the allegations or questioned him about them. T. 38, 66. Similarly, Officer Kennedy's testimony that he planned to arrest Circle Bear after he confessed to drinking with R.H., T. 50–51, 66, 70–71, does not mean Circle Bear was in custody prior to his arrest and did not induce or contribute to Circle Bear's statements because Officer Kennedy did not communicate his intention to arrest Circle Bear until actually doing so. T. 64. The circumstances of the interview after Circle Bear's confession were not such that a reasonable person in Circle Bear's position would have believed that the interview was custodial. As Judge Moreno found, nothing in the environment or in Officer Kennedy's treatment of Circle Bear changed until Circle Bear's arrest. Despite his confession, Circle Bear still had unrestrained freedom of movement in his own motel room while a single officer asked him a modest number of questions. And although Circle Bear was never told he could leave and was ultimately arrested, there is no evidence that Officer Kennedy ever blocked Circle Bear's exit, made a showing of force or intimidation, or continued the interview after Circle Bear sought to end it. Under these circumstances, Circle Bear was not in custody for the purposes of <u>Miranda</u> until he was arrested. His objections concerning this issue are overruled.

### C. Evidence from Motel Room

Circle Bear objects to Judge Moreno's conclusion that the officers properly seized the evidence from his motel room under the plain view doctrine. Judge Moreno held that the plain view doctrine applied because the officers were lawfully in the room, the incriminating nature of the evidence was immediately apparent, and the officers had a lawful right of access to the objects seized. See <u>United States v. Wilson</u>, 565 F.3d 1059, 1064–65 (8th Cir. 2009) (listing

elements of the plain view doctrine). Circle Bear makes three arguments against application of the plain view doctrine.

First, Circle Bear argues that the plain view doctrine is inapplicable because Officer Kennedy entered the motel room illegally. As explained already, Officer Kennedy's entry of the room was lawful because Circle Bear consented to it.

Second, Circle Bear argues that the plain view doctrine should not apply because the items seized were unrelated to his arrest for contributing to the delinquency of a minor. There is no requirement, however, that the evidence seized relate to the crime being investigated or resulting in an arrest. Id. at 1065 (holding that agent's seizure of video camera while executing arrest warrant for firearm violation was proper under the plain view doctrine where agent recognized camera as one used in earlier child pornography activity by defendant). Thus, if the elements of the plain view doctrine were met, Officers Kennedy and Lafferty could seize evidence from the room despite it not being connected to the particular crime for which Circle Bear was arrested.

Third, Circle Bear argues that the plain view doctrine is inapplicable because the incriminating nature of the evidence seized was not immediately apparent. An object's incriminatory nature is immediately apparent if there is probable cause to associate the object with criminal activity. United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995). "Probable cause demands not that an officer be sure or certain but only that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful evidence of a crime." Wilson, 565 F.3d at 1065 (quoting United States v. Weinbender, 109 F.3d 1327, 1330 (8th Cir. 1997)). Courts may consider the collective

knowledge of officers conducting a search to determine whether there was probable cause to seize an object. United States v. Banks, 514 F.3d 769, 776 (8th Cir. 2008).

Room 202 was a typical double-occupancy motel room; it had a bathroom near the entrance and two queen-size beds separated by a night stand. T. 35; Exs. A-2, A-10, A-12, A-13. According to the testimony of the officers and the pictures of the room received into evidence, there were some panties, a gray and pink duffel bag, a towel, a blanket, and an undershirt lying close together on the floor between the beds. T. 34–35, 69, 90; Exs. A-10, A-22. Three pairs of blue jeans were visible in the room—one pair lay folded next to a black and red duffel bag on a desk, another pair lay on the floor between the bathroom and the bed closest to the entrance, and a third pair lay crumpled by the door. T. 59, 95; Exs. A-3, A-11, A-14. The size, belt, and design of the blue jeans by the door made clear that they belonged to a female; a later inspection of the jeans revealed a pair of panties on one of the pant legs. T. 95, Exs. A-14, A-15. A picture of the bathroom shows wet footprints on the floor and a blue loofah on the edge of the bathtub. Ex. A-37; see also T. 54, 90–93. The officers seized several items from the room, including three pairs of blue jeans, the blanket, panties, undershirt, and towel located between the beds, the blue loofah, the bedding from the bed closest to the entrance, and a white t-shirt. T. 97, Ex. B.

The officers had probable cause to believe that the majority of the items they seized would be useful evidence of a sexual assault. At the time the officers viewed the items, they had already met with R.H. at the convenience store. She was wearing a sweatshirt and pajama pants but no shoes or socks, and appeared distraught and intoxicated. T. 17, 19, 84–85, 99–100. She told the officers that she had passed out in room 202 of the Cheyenne River Motel after Circle Bear forced her to drink and that she had awoke to Circle Bear engaging in sexual intercourse with her. T. 24, 86. When Officer Kennedy spoke with Circle Bear, Circle Bear admitted that

R.H. was staying in room 202 and that he had been drinking with her. T. 30, 37, 48–49. These facts warranted a belief that evidence of a sexual assault such as blood, semen, or another bodily fluid could be found on the bedding, panties, undershirt, female jeans, loofah, and the blanket and towel.

The appearance and location of the female jeans, undershirt, and panties suggest that R.H. may have been wearing them around the time of the alleged sexual assault. Exs. A-14; A-22. It was therefore probable that these items would contain evidence of a crime. See State v. Mata, 609 P.2d 48, 54 (Ariz. 1980) (holding that police could seize woman's jacket, sandals, and panties from defendant's apartment where police had been informed that woman had been raped and then taken from apartment); 3 Wayne R. LaFave, Search and Seizure § 6.7(a) (5th ed. 2014) (explaining that officers may seize clothing under plain view doctrine where they have probable cause to believe it belonged to victim). The same is true of the bedding from the bed closest to the door and the loofah. The officers apparently believed that the alleged sexual assault occurred in the bed closest to the door because it was the most disheveled. T. 35, 97. As for the loofah, its location on the edge of the bathtub and the wet footprints suggest that it may have been used to clean up after a sexual encounter. Ex. A-37. Finally, although it may have been less likely that evidence of the alleged sexual assault would be found on the blanket and towel, the officers still had probable cause to seize these items—the blanket and towel appeared to belong to or have been used by R.H. as they were lying right beside the undershirt and panties. Exs. A-9, A-10, A-22.

The other items the officers seized from the room—the two remaining pairs of blue jeans and the white t-shirt—are a different matter. The record is not entirely clear whether the jeans shown in the pictures—one pair lying folded on the desk and the other pair lying between the

bathroom and the bed closest to the door—were the ones actually seized. Further, this Court did not see a white t-shirt in the pictures of the room and there was no testimony about it. Without more information, this Court is unable to determine whether the two pairs of jeans and the white t-shirt fall within the plain view doctrine. Accordingly this Court reserves final ruling on the admissibility of the two pairs of jeans and the white t-shirt until the pretrial conference. Circle Bear's objections to the other evidence seized from the room are overruled.

### D. Statements at Law Enforcement Center

Circle Bear's final objections assert that his statements to Detective Runs After at the Law Enforcement Center are inadmissible because they were involuntary under the Fifth Amendment and because he never executed a valid waiver of his Miranda rights. Judge Moreno rejected both of these arguments. Citing Circle Bear's receipt of Miranda warnings, the lack of any police coercion, and Circle Bear's background and conduct during the interview, Judge Moreno concluded that Circle Bear's statements were voluntary. See Dickerson v. United States, 530 U.S. 428, 444 (2000) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." (quoting Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984))); United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc) (discussing standard for determining whether a statement was voluntary). He also found that Circle Bear had knowingly and voluntarily waived his Miranda rights because, among other reasons, Circle Bear was never subject to any police overreaching, told the officers that he understood his rights, and signed a form stating that he waived them. See Colorado v. Spring, 479 U.S. 564, 573–74 (1987) (setting forth standard for knowing and voluntary waiver of Miranda rights); North Carolina v. Butler, 441 U.S. 369, 373 (1979) ("An express written or oral

statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver . . . .").

This Court agrees with Judge Moreno's factual findings and legal conclusions concerning Circle Bear's statements at the Law Enforcement Center. The objections Circle Bear now makes to these conclusions were fully addressed by Judge Moreno and do not require further analysis. For the reasons stated in the Report and Recommendation, this Court finds that Circle Bear's statements were voluntary and his Miranda waiver was valid. Circle Bear's objections on these issues are overruled.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Circle Bear's Motion to Suppress Evidence and Statements, Doc. 27, is denied except to the extent it seeks to suppress the two pairs of jeans and the white t-shirt. The Court reserves ruling on the admissibility of these items until the pretrial conference. It is further

ORDERED that the Report and Recommendation, Doc. 40, is otherwise adopted.

DATED this 30th day of April, 2015.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE