UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. RONNIE KEITH CIRCLE BEAR, Defendant. | 3:14-CR-30122-RAL OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE |
|---|---|

A federal grand jury indicted Ronnie Circle Bear (Circle Bear) on one count of aggravated sexual abuse by force in violation of 18 U.S.C. §§ 1153, 2241(a) and 2246(2)(A) and one count of sexual abuse of a person incapable of consenting in violation of 18 U.S.C. §§ 1153, 2242(2), and 246(2)(A). Doc. 1. On October 7, 2015, Circle Bear appeared before this Court entered a guilty plea to the sexual abuse of a person incapable of consent count. Doc. 66. On January 2, 2016, this Court held a sentencing hearing in Circle Bear's case and imposed a custody sentence of 121 months to be followed by five years of supervised release. Docs. 77 at 2; 79 at 2–3, 5. At that time, the remaining count in the indictment was dismissed and Circle Bear was remanded into custody. Doc. 77 at 2; 79 at 1–2. Circle Bear is currently incarcerated at Englewood Federal Correctional Institution (FCI Englewood) and has filed a pro se motion for compassionate release, citing his health conditions in combination with the global COVID-19 pandemic as justification. Doc. 82. The Federal Public Defender Office for the Districts of North and South Dakota (FPD) has submitted a supplement to Circle Bear's motion, and the Government has responded in opposition. Docs. 87, 89. FPD has replied. Doc. 90. This Court has considered Circle Bear's motion, and for the reasons stated herein, denies his motion at this time.

1

I.   **Background**

Circle Bear's conviction resulted from a sexual assault he perpetrated on a minor victim who was under his custody, care, and control at the time. Doc. 74 at ¶ 21; 78 at 5. The facts relating to the incident are disturbing, and they had severe, lasting effects on the victim. Doc. 74 ¶ 15.

On June 23, 2014, Circle Bear, who was 51 years old at the time, was scheduled to travel from Rapid City to Eagle Butte, South Dakota, for his job. Doc. 62 at 1. His cousin's daughter, R.H. who was seventeen years old at the time, accompanied him on the trip so she could attend a pow wow in McLaughlin, a town north of Eagle Butte. Docs. 62 at 2; 74 at ¶ 9. In Eagle Butte, Circle Bear rented a room at a motel. Doc. 62 at 2. He then purchased alcohol and provided it to R.H., who after drinking for several hours, passed out on her bed with her clothes on. Id. While she was passed out on the bed, Circle Bear removed R.H.'s pants and underwear and engaged in sexual intercourse with her. Id. R.H. awoke while Circle Bear was having intercourse with her and told him to stop. Doc. 74 at ¶ 10. He responded by telling her it was going to be okay, and he continued to have intercourse with her. Id. When the assault was over, Circle Bear told R.H. not to tell anyone or he would hurt her mother or sister. Id. at ¶ 11. After the assault, R.H. put on a pair of sweatpants Circle Bear had handed her, left the motel room, and went to the front desk where the front desk clerk called law enforcement. Docs. 62 at 2; 74 at ¶ 11.

According to the presentence investigation report (PSR) prepared for Circle Bear's sentencing, the attack had a lasting emotional impact on the victim. In March of 2015, R.H. experienced suicidal ideation while intoxicated. Doc. 74 at ¶ 15. She reportedly began cutting her forearms and wrists and attempted to hang herself because she could not get the event out of her mind. Id.

Under the sentencing guidelines, Circle Bear's total offense level for this offense was 31 and Circle Bear was in criminal history category II. Id. at ¶ 75. This meant that Circle Bear's advisory guideline range was 121 months to 151 months custody. Id. This Court held a sentencing hearing in Circle Bear's case on January 4, 2016, and heard arguments on objections to the PSR and ultimately adopted the PSR without change. Docs. 77 at 1; 78 at 1. After hearing argument from both parties as to the appropriate sentence and hearing from Circle Bear himself, this Court sentenced Circle Bear at the low end of his guideline range to 121 months custody with the mandatory minimum five-year term of supervised release. Docs. 77 at 1–2; 79 at 2–3. Circle Bear has been in custody since his sentencing hearing and is currently incarcerated at FCI Englewood. See Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Aug. 19, 2020).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a mystery to medical professionals and society in general. Some people can contract the virus and be completely asymptomatic, while other people develop complications and die from having contracted the illness. The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Aug. 19, 2020).

3

Circle Bear currently suffers from, among other things, the following medical conditions: hypothyroidism, hyperlipidemia, heart disease, and an enlarged prostate. Docs. 84 at 27–28, 55–56, 125–26, 208–09, 265–66, 340–41, 411–12; 86 at 40, 91–92. He also has significant medical history, including a history of heart disease and murmur, and he had a prosthetic heart valve replacement around age four and had a stent placed sometime around 2009. Docs. 84 at 24, 82, 94, 112, 144, 180, 206; 86 at 37. This Court was aware of Circle Bear's heart issues at the time of sentencing. Doc. 74 at ¶¶ 60–61. He has now filed a motion for compassionate release with this Court based on those conditions and the increased susceptibility to complications to COVID-19 he faces if he contracts the disease. Doc. 82.

## II. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction; ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### III. Discussion

Circle Bear submitted a request for compassionate release to the warden of his institution on May 27, 2020, outlining some of his medical conditions and his possible release plan. Doc. 87-1. He sent a second request for compassionate release on June 17, 2020, on the Bureau of Prisons (BOP) preferred "Inmate Request to Staff" form. Doc. 87-3. Both of those requests were submitted more than thirty days ago, and the BOP has not submitted a motion for compassionate release on Circle Bear's behalf. Therefore, this Court may entertain Circle Bear's motion directly.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. The nature and circumstances of the offense are detailed above and are disturbing. Those facts, along with Circle Bear's criminal history points, resulted in a 121-151 month guideline range under the sentencing guidelines. Circle Bear's personal history and characteristics indicate that he lived most of his life in Rapid City, SD, and that he was primarily raised by his mother. Doc.74 at ¶ 55–56. Around age 20, Circle Bear married, and the union lasted for approximately seven years and resulted in two sons, both of whom are now grown. Id. at ¶ 57. Circle Bear had some employment history and possibly some substance abuse issues. Id. at ¶¶ 56–67, 69–70. A guideline range sentence like the one imposed was necessary for several reasons. First, a lengthy sentence adequately reflected the seriousness of the offense and provided just punishment. Second, the type of criminal conduct at issue here requires a powerful deterrent, and the 121-month sentence was designed to protect the public and to provide the Circle Bear with substance abuse and mental health treatment in an effective manner. Doc. 79 at 2; see Doc. 84 at 27–28 (indicating that Circle Bear currently receives services for perpetrator of non-parental sexual abuse and sex counseling). Overall, the 121-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but it was not greater than necessary.

Circle Bear has now served nearly half of his full sentence and has served slightly more than half of his "statutory term." Doc. 86 at 95. Since he entered BOP custody, Circle Bear, now age 57, has received his GED and completed other education courses, including reentry classes, religion classes, and drug programs. Docs. 84 at 415; 86 at 96, 98. He has had no discipline reports and appears to have had consistent and productive work details. Doc. 86 at 97, 99.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide

examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Circle Bear argues primarily that he qualifies for release under the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D), but argues in the alternative that he would qualify under

comment note 1(A)(ii). Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). However, Circle Bear does not claim that it is his serious physical or medical condition that makes him unable to provide self-care in his correctional facility. Rather, he argues that the conditions of confinement, a factor not contemplated by the comment note, make it difficult or impossible to practice the type of self-care recommended by the CDC. Therefore, Circle Bear cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(A)(ii).

This Court next considers Circle Bear's circumstances under the "catch all provision." Circle Bear argues that his underlying health conditions combined with the increased risks he faces if he contracts COVID-19 establish an "extraordinary and compelling" reason other than those specifically identified to justify a sentence reduction. The COVID-19 pandemic has impacted this country and its economy in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). FCI Englewood currently has five active inmate infections of COVID-19; five inmates and one staff have recovered from the illness, and the facility has reported no deaths. See COVID-19, Coronavirus, Federal Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Aug. 19, 2020). The question becomes whether Circle Bear's medical conditions— hypothyroidism, hyperlipidemia, heart disease, and an enlarged prostate with a family history of prostate cancer—

combined with the conditions of confinement during the COVID-19 pandemic justify compassionate release.

The CDC has recognized that people with serious heart conditions are at increased risk of severe illness if they contract COVID-19. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Aug. 19, 2020). Circle Bear received a prosthetic heart valve replacement around age four and had a stent placed in about 2009. He currently suffers from heart disease which his medical records list as "unspecified," and he has a history of heart disease and murmur as well as a family history of prostate cancer. Docs. 74 at ¶ 53; 84 at 27, 180; 86 at 78. In some of Circle Bear's medical records, he is described as having coronary artery disease, but it is not listed in his diagnoses. See Doc. 84 at 63. There is nothing more to suggest that Circle Bear is at elevated risk for COVID-19 contraction or death or great harm therefrom, and the BOP facility housing Circle Bear has had very few cases.

Circle Bear has served a bit less than half of his 121-month sentence for raping the 17-year-old daughter of his cousin after getting her drunk to the point of passing out, while the 17-year-old was in his custody and care. He continued raping her after she regained consciousness and threatened to harm her family members if she reported the incident. Circle Bear appears, to his credit, to have worked on improving himself in custody. However, this Court does not find "extraordinary or compelling" reasons here to grant the motion for compassionate release.

### IV. Conclusion and Order

Therefore, it is hereby

ORDERED that Circle Bear's motion for compassionate release, Doc. 82, is denied.

DATED this 20th day of August, 2020.

                                        BY THE COURT:

                                        */s/ Roberto A. Lange*
                                        ROBERTO A. LANGE
                                        CHIEF JUDGE